UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

December 2, 2015

LETTER TO COUNSEL

RE: *John Davis, Jr. v. Commissioner, Social Security Administration*;
Civil No. SAG-14-3271

Dear Counsel:

On October 20, 2014, Plaintiff John Davis Jr. petitioned this Court to review the Social Security Administration's final decision to deny his claim for Disability Insurance Benefits. (ECF No. 1). I have considered the parties' cross-motions for summary judgment. (ECF Nos. 24, 29). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2014). This Court must uphold the decision of the Agency if it is supported by substantial evidence and if the Agency employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will deny Plaintiff's motion and grant the Commissioner's motion. This letter explains my rationale.

Mr. Davis filed a claim for Disability Insurance Benefits on September 9, 2013, alleging a disability onset date of April 19, 2012. (Tr. 170-72). His claim was denied initially and on reconsideration. (Tr. 110-15). A hearing was held on April 7, 2014, before an Administrative Law Judge ("ALJ"). (Tr. 34-87). Following the hearing, the ALJ determined that Mr. Davis was not disabled within the meaning of the Social Security Act during the relevant time frame. (Tr. 8-28). The Appeals Council denied Mr. Davis's request for review, (Tr. 1-4), so the ALJ's decision constitutes the final, reviewable decision of the Agency.

The ALJ found that Mr. Davis suffered from the severe impairments of anxiety, post-traumatic stress disorder (PTSD), depression, and bipolar disorder. (Tr. 13). Despite these impairments, the ALJ determined that Mr. Davis retained the residual functional capacity ("RFC") to:

> perform a full range of work at all exertional levels but with the following nonexertional limitations: work that is simple as defined in the DOT as SVP levels 1 and 2, routine and repetitive tasks in a work environment free of fast paced production requirements, which is defined as constant activity with work tasks performed sequentially in rapid succession; and no more than occasional interaction with coworkers and supervisors and shall avoid all interaction with the public.

*John Davis Jr., v. Commissioner, Social Security Administration*
Civil No. SAG-14-3271
December 2, 2015
Page 2

(Tr. 16-17). After considering the testimony of a vocational expert ("VE"), the ALJ determined that Mr. Davis could perform representative jobs existing in significant numbers in the national economy, and that, therefore, he was not disabled. (Tr. 23-24).

On appeal, Mr. Davis essentially challenges the ALJ's adverse credibility assessment, suggesting that if the testimony of Mr. Davis and his wife were credited, his impairments would be deemed to meet the criteria of a mental health listing. This Court's role is not to reweigh the evidence or to substitute its judgment for that of the ALJ, but simply to adjudicate whether the ALJ's decision was supported by substantial evidence. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Because the ALJ's findings in this case were supported by substantial evidence, remand is unwarranted.

The ALJ provided a detailed summary of the testimony by Mr. Davis and his wife at the hearing, and the evidence they provided in writing via function reports. (Tr. 17-19). However, the ALJ concluded that the Davises' statements were not entirely credible. In reaching that conclusion, the ALJ cited multiple evidentiary sources suggesting a greater functional capacity. Initially, the ALJ cited to the opinions of two State agency psychological consultants, Drs. Prout and Clark, who opined that Mr. Davis had moderate limitations that did not meet the criteria of the mental health listings. (Tr. 14, 92-95, 104-07). The ALJ concurred with the assessment of those consultants, reasoning that the consultants' views comported with evidence about Mr. Davis's activities of daily living, his participation in a daily group program, various treatment notes from medical providers, and the results of objective testing such as the MMSE. (Tr. 14-16). The ALJ further summarized the treatment records. The ALJ noted that during Mr. Davis's hospitalization in April, 2012, Mr. Davis was appropriate and pleasant in all of his interactions and requested discharge after one day of treatment. He displayed "a euthymic and stable mood and affect, intact cognition, an ability to focus and normal memory." (Tr. 19, 325, 345, 346). Subsequent mental health treatment notes from 2012 also reflected mild to moderate symptoms, including a December 14, 2012 appointment where Mr. Davis reported "doing great." (Tr. 20, 273, 279, 498-99, 494). Mr. Davis subsequently stopped appearing for treatment. (Tr. 495-96). In the fall of 2013, Mr. Davis reported increased symptoms, but remained friendly and cooperative during his appointments. (Tr. 20, 305-06, 309, 315). The treating physician, Dr. Amparo, recommended that Mr. Davis again begin taking psychiatric medication. (Tr. 20, 312-13). Mr. Davis missed multiple appointments at Key Point and consistently refused to take his prescribed medication. Nonetheless, at his appointments, he was friendly, cooperative, and displayed normal cognitive functioning. (Tr. 20, 305-06, 309, 448, 494, 498-99). The ALJ also cited to the consultative examination with Dr. Hurwitz, which revealed some symptoms of anxiety but otherwise revealed only mild symptoms and a score of 29/30 on the MMSE. (Tr. 21, 290-93).

In light of all of that evidence, the ALJ assigned substantial weight to the opinions of Drs. Prout and Clark. The ALJ also provided a detailed analysis of the GAF scores of record, assigning substantial weight to most of the GAF scores but only "little weight" to the GAF score of 68, which the ALJ found to understate the severity of Mr. Davis's condition. (Tr. 22). While

*John Davis Jr., v. Commissioner, Social Security Administration*
Civil No. SAG-14-3271
December 2, 2015
Page 3

it is well established that GAF scores are not determinative of disability, *see, e.g., Davis v. Astrue*, Case No. JKS-09-2545, 2010 WL 5237850, at *3 (D. Md. Dec. 15, 2010), nothing prohibits an ALJ from considering GAF scores as one component of a full analysis of the evidence of record.  *See, e.g., Kozel v. Astrue*, No. JKS-10-2180, 2012 WL 2951554, at *10 (D. Md. July 18, 2012) ("[E]ven though a GAF score is not determinative of whether a person is disabled under SSA regulations, it may inform an ALJ's judgment.").  Finally, the ALJ also assigned "moderate weight" to Dr. Hurwitz's opinion that Mr. Davis was socially withdrawn, acknowledging evidence of moderate difficulties with social functioning but also finding that Mr. Davis retained the capacity to interact appropriately in several different settings.  (Tr. 22, 290-93).  In light of the evidence summarized above, and appropriately cited by the ALJ, the ALJ supported his credibility assessment with substantial evidence derived from the medical sources.  Accordingly, there is no basis for remand.

      For the reasons set forth herein, Mr. Davis's Motion for Summary Judgment (ECF No. 24) is DENIED and Defendant's Motion for Summary Judgment (ECF No. 29) is GRANTED.  The clerk is directed to CLOSE this case.

      Despite the informal nature of this letter, it should be flagged as an opinion and docketed as an order.

                                     Sincerely yours,

                                     /s/

                                   Stephanie A. Gallagher
                                   United States Magistrate Judge